# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ALEXANDRA BEER<br><br>v.<br><br>HOME CARE ASSOCIATES OF PHILADELPHIA, INC.; HOME CARE ASSOCIATES OF PHILADELPHIA, INC. *d/b/a* HOME CARE ASSOCIATES; DONNA JENKINS, *individually*; TASHA COOPER, *individually*; SHAQUILA BENSON, *individually*; and AISHA (Last Name Unknown), *individually* | CIVIL ACTION<br><br>NO. 18-2640 |
|---|---|

## MEMORANDUM RE: MOTIONS TO DISMISS

**Baylson, J.**                                                                                          **March 18, 2019**

This case involves alleged violations of the Americans with Disabilities Act (the "ADA") and state law that occurred during Plaintiff Alexandra Beer's employment and subsequent termination from employment with Defendants Home Care Associates of Philadelphia, Inc. and Home Care Associates of Philadelphia, Inc. *d/b/a* Home Care Associates (together, the "HCA Defendants"). Plaintiff asserts claims against the HCA Defendants and the following individual Defendants: Donna Jenkins, Tasha Cooper, Shaquila Benson, and Aisha (Last Name Unknown). Defendants Cooper and Aisha Parker[1] now move to dismiss all of the claims pled against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 6). The HCA Defendants also move to dismiss Plaintiff's claim for intentional infliction of emotional distress. (ECF 8). Defendants Jenkins and Benson have not moved to dismiss or otherwise answered Plaintiff's Complaint, nor

---

[1] Defendants' briefing identifies Tasha Cooper as "Tatia Cooper," and further identifies the Aisha (Last Name Unknown) in the case caption as "Aisha Parker." (ECF 6-1). The Court will refer to both Defendants by their last names—"Cooper" and "Parker" throughout this Opinion.

1

does the record reflect that they were served with Plaintiff's Complaint.

For the reasons stated below, the Motions to Dismiss are GRANTED.

**I.     Background**

For the purposes of this motion, the following facts are taken as true from Plaintiff's Complaint. (ECF 1, "Compl." or "Complaint").

Around December 8, 2015, the HCA Defendants hired Plaintiff to work as a home health aide. Id. ¶ 24. From the beginning of her employment through initiating this lawsuit, Plaintiff has been diagnosed with Postural Orthostatic Tachycardia Syndrome ("POTS") and an intellectual disability. Id. ¶ 25. POTS is a cardiological condition that causes abnormal increases in heart rate, blurred vision, trouble thinking, lightheadedness, weakness, and other symptoms. Id. ¶ 26. Plaintiff alleges that the HCA Defendants were aware of her disabilities since the beginning of her employment because she specifically informed the HCA Defendants of both disabilities during her training and after her training was completed. Id. ¶ 27.

From the beginning of her employment, Plaintiff contends that she was regularly harassed by the HCA Defendants' employees about her disabilities. Id. ¶ 28. Benson and Jenkins would regularly tell Plaintiff that she was "retarded" and "too slow," and her supervisors and other co-workers would "harass [her] in such a way on a daily basis, both in private and in front of other co-workers." Id. Plaintiff also alleges that Defendants[2] told her clients she was "retarded." Id. ¶ 30. They would also make fun of Plaintiff's physical appearance and would harass her about her speech impediment—caused by her disability—by telling her that she "doesn't talk right" and to "talk better." Id. ¶¶ 28–29. The constant harassment was so pervasive that Plaintiff cried at work

---

[2]     Where Plaintiff uses the collective term "Defendants" in her Complaint, rather than specifying which of the named Defendants she is referring to, this Court also uses the collective term.

on numerous occasions, which caused Plaintiff's supervisors to complain that she "cries too much." Id. ¶ 31.

Plaintiff reported the harassment on multiple occasions, but whenever she would attempt to tell Cooper, her supervisor, Cooper would dismiss the reports by saying "[m]aybe this job just isn't for you" and "[m]aybe you can't handle this job." Id. ¶ 32. Plaintiff alleges that neither Cooper nor any other of the HCA Defendants' employees ever investigated the reports. Id. ¶ 33. The Employee Handbook contains no provisions regarding procedures or instructions for reporting harassment or discrimination, aside from sexual harassment by a client, nor does it include a telephone number for Human Resources. Id. Plaintiff thus alleges she had no other known options for reporting the "unyielding, vicious harassment." Id. At some point, Defendants began assigning fewer "cases" to Plaintiff than her non-disabled co-workers. Id. ¶ 34. As a result, Plaintiff would typically receive only several hours of work per week, while many of her co-workers received full-time schedules. Id. ¶ 34. When Plaintiff addressed this disparity in hours with her supervisors, Defendants replied that she "[wasn't] good enough" to handle more cases." Id. ¶ 35.

The Complaint highlights several bad experiences between Plaintiff and her supervisors while Plaintiff was on duty. On one occasion, Plaintiff encountered a clog in a sink at a client's home while attempting to rinse out the client's portable commode. Id. ¶ 36. The client initially explained the clog by saying she "always had plumbing issues," however she later became enraged with Plaintiff and blamed her for the clog. Id. After the client called Plaintiff's supervisor, Defendants blamed Plaintiff for the incident. Id. ¶ 37.

On another occasion, Plaintiff's POTS caused her to become lightheaded while working with a client. Id. ¶ 38. Plaintiff explained that she needed to sit down because of her condition. Id. When she returned to Defendants' office, Defendants issued a write-up for her doing so, and

Jenkins told Plaintiff "your mouth's going to get you in trouble" and "you'd better not talk to any more clients about your personal business." Id. ¶ 39. Defendants later accused Plaintiff of talking about "personal business" with a client on a second occasion, although they refused to tell her when it occurred or who made the claim. Id. ¶ 43. Still, Defendants issued Plaintiff a write-up and told her that the company president would "make a decision" about whether to terminate her employment. Id.

On several occasions, the HCA Defendants sent Plaintiff to clients who were not home or did not answer the door when she arrived. Id. ¶ 41. When Plaintiff would call the HCA Defendants' office and ask how to proceed, Defendants would become angry and tell her "[s]top calling this number"; "[s]top calling and start figuring things out"; and "[i]f you can't [do your job], maybe you can't work here." Id. Defendants would then tell Plaintiff she could not leave the residence until she got permission, which resulted in Plaintiff waiting alone for extended periods of time. Id. According to Plaintiff, Defendants did not treat non-disabled employees in the same manner. Id. ¶ 42. Plaintiff believes Defendants took such actions to convince her to voluntarily quit her job. Id.

In April, 2017, Defendants cut Plaintiff's hours even further, at times assigning her only one hour of work per week. Id. ¶ 44. Defendants told Plaintiff she was getting fewer hours because clients complained about her "every time," however they refused to tell Plaintiff who was making complaints and what they were about. Id. Plaintiff contends that she never directly received complaints from any clients. Id. In August or September, 2017, Defendants cut Plaintiff's hours again without explanation. Id. ¶ 46. From then on, Defendants only assigned Plaintiff twelve or fewer hours of work per week, while her non-disabled coworkers received full-time hours. Id. ¶ 46.

In October, 2017, Plaintiff informed Defendants that she had to take several days off from work to undergo a surgical procedure. Id. ¶ 47. In response, Parker became angry and said "we have to talk." Id. Plaintiff went to meet with Parker, who stated that Plaintiff was "calling out too much" and that Plaintiff's medical procedure "wasn't an excuse," despite Plaintiff having a doctor's note. Id. ¶ 48. Defendants then terminated Plaintiff's employment and required her to sign a document, but refused to provide her with a copy or inform her of what she was signing. Id. ¶ 49. Sometime thereafter, Plaintiff obtained new employment. Id. ¶ 50. In November 2017, Defendants sent Plaintiff's new employer a letter that falsely stated that Plaintiff had been terminated for excessive absenteeism. Id. ¶ 50. Plaintiff believes the letter was an act of retaliation. Id.

Finally, the Complaint explains that it includes "just some examples[] of some of the sexual discrimination and harassment to which Defendants subjected Plaintiff." Id. ¶ 54. Plaintiff alleges alternatively—anticipating that Defendants may argue such—that she makes all applicable claims for the above-described conduct under the applicable law for independent contractors. Id. ¶ 56.

Plaintiff claims that Defendants' action caused her to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed. Id. ¶ 51. She further claims to have suffered: loss of income; loss of salary, bonuses, benefits, and other compensation that such employment entails; future pecuniary losses; emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses; and severe emotion and physical distress. Id. ¶ 52. The Complaint also alleges that Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law, thus making punitive damages appropriate. Id. ¶ 53.

The Complaint is comprised of the following causes of action, each brought against all of the Defendants, collectively:

    First Cause of Action:        Discrimination under the ADA.

    Second Cause of Action:     Retaliation under the ADA.

    Third Cause of Action:       Intentional Infliction of Emotional Distress.

Cooper and Parker moved to dismiss the Complaint in its entirety on October 9, 2018. (ECF 6, "Cooper Mot."). Plaintiff responded in opposition on October 23, 2018. (ECF 7, "Opp'n to Cooper Mot."). The HCA Defendants moved to dismiss Plaintiff's Third Cause of Action for Intentional Infliction of Emotional Distress on November 16, 2018. (ECF 8, "HCA Mot."). Plaintiff responded in opposition on November 28, 2018. (ECF 9, "Opp'n to HCA Mot."). Defendants Jenkins and Benson have not moved to dismiss or otherwise answered Plaintiff's Complaint, nor does the record reflect that they were served with Plaintiff's Complaint.

Despite the absence of reply briefs, the two motions to dismiss are now ripe for decision.

**II.**    **Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal,

556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### III. Discussion

#### A. Discrimination and Retaliation Under the ADA (First and Second Causes of Action)

Cooper and Parker have moved to dismiss Plaintiff's ADA claims to the extent they are pled against them because they do not constitute "covered entities" under the ADA. Title I of the ADA prohibits employment discrimination by a "covered entity," which is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. §§ 12111, 12112. The Third Circuit has explained in dicta that individuals cannot be held liable for damages in employment cases under the ADA. See Koslow v. Commonwealth, 302 F.3d 161, 178 (3d Cir. 2002) ("[T]here appears to be no individual liability for damages under Title I of the ADA."). Consistent with this principle, district courts within the Eastern District of Pennsylvania have declined to extend individual liability under the ADA. See, e.g., Datto v. Harrison, 664 F. Supp. 2d 472, 488 (E.D. Pa. 2009) (relying on Title VII precedent to limit individual liability for ADA retaliation to claims involving public entities or accommodations); McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 398 (E.D. Pa. 2002)

7

(dismissing ADA discrimination and retaliation claims against individual defendants with prejudice).

The Complaint does not allege that Cooper or Parker were employers or that they otherwise fit within the definition of "covered entity" under the ADA. Rather, Plaintiff alleges that Cooper and Parker were the HCA Defendants' employees. See Compl. ¶¶ 15, 22.

Plaintiff concedes that Cooper and Parker can not be held individually liable for discrimination or retaliation under the ADA. Opp'n to Cooper Mot. at 7–9. Plaintiff argues, though, that the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO") do allow for recovery from individuals on claims for aiding and abetting discriminatory practices. Id. at 8. Plaintiff explains that she intends to move to amend her pleadings to include such claims against Cooper and Parker (as well as against the HCA Defendants), but that she was unable to allege those claims earlier than one year after the date of her initial administrative filing—which would be December 10, 2018. Id. (citing 43 P.S. § 962(c)(1)). Thus, she argues that this Court should not dismiss the ADA claims pled against Cooper and Parker because doing so would dismiss Cooper and Parker from the case,[3] which would be "manifestly unfair" to Plaintiff because she was unable to bring her claims under the PHRA and PFPO at the time of filing. Id.

In light of the foregoing, it is undisputed that Plaintiff cannot maintain a cause of action for discrimination or retaliation under the ADA against Cooper or Parker. Plaintiff cannot use these claims as some kind of placeholder for the state law claims that she plans to file at an

---

[3] As explained below, Plaintiff has agreed to withdraw her claims against Cooper and Parker under the Third Cause of Action for Intentional Infliction of Emotional Distress. See Opp'n to Cooper Mot. at 3 n1.

unspecified future date.⁴  The First and Second Causes of Action are thus dismissed as to Defendants Cooper and Parker.  Further, these claims are dismissed with prejudice.  This Court may deny leave to amend a complaint after a responsive pleadings has been filed where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  The parties here agree that Plaintiff cannot maintain a claim under the ADA against Cooper or Parker—any attempts to amend the ADA claims pled against them would therefore be futile.  If Plaintiff wishes to allege new and separate causes of action against Cooper and Parker, she will need to file a motion explaining her reasons for doing so.

The First and Second Causes of Action are therefore dismissed with prejudice with respect to Cooper and Parker.  Because the remaining Defendants have not moved to dismiss these claims, the First and Second Causes of Action will continue against them.

### B. Intentional Infliction of Emotional Distress (Third Cause of Action)

Cooper, Parker, and the HCA Defendants have all moved to dismiss Plaintiff's Third Cause of Action for Intentional Infliction of Emotional Distress.  Plaintiff has affirmatively explained that she does not oppose dismissal of this claim.  See Opp'n to Cooper Mot. at 3 n.1; Opp'n to HCA Mot. at 1.  The Third Cause of Action is therefore withdrawn as to Cooper, Parker, and the HCA Defendants.⁵

---

⁴  The Court notes that December 10, 2018 has long passed and Plaintiff has yet to move to amend her pleading.

⁵  Plaintiff's Opposition to the HCA Defendants' Motion implies that she plans to drop her Intentional Infliction of Emotional Distress claim as to *all* Defendants.  Defendants Jenkins and Benson have not yet responded to the Complaint.  However, the Court understands that Plaintiff will not plead such a claim against any of the currently named Defendants if Plaintiff amends her Complaint in the future.

## IV. Conclusion

For the reasons stated above, the Motions to Dismiss (ECF 6 & 8) are GRANTED.

An appropriate Order follows.

O:\CIVIL 18\18-2640 Beer v Home Care Assocs of Phila Inc\18cv2640 Memo re Mots to Dismiss